# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

<u>IN RE:</u>
**BURTON WIAND
RECEIVERSHIP
CASES PENDING
IN THE TAMPA                     Case Nos.: 8:05-cv-1856-T-27MSS, et al.,
DIVISION OF THE
MIDDLE DISTRICT
OF FLORIDA**

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** comes before the Court on motions to dismiss filed on or before August 17, 2006 (the "Motions"), by Defendants in fourteen of the approximately eighty cases consolidated to the Undersigned by omnibus order.[1]  On August 17, 2006, the Court directed the Receiver to respond in an extended global response to the Motions by September 15, 2006, and Defendants were given leave to reply.[2] The remaining cases were stayed pending resolution of the Motions.  On November 17, 2006, the Motions were considered on oral argument, at which time supplemental authority was submitted for consideration by several of the parties. The transcript of the hearing was filed on December 18, 2006.

---

[1] All pretrial matters in the cases were referred to the Undersigned for resolution by order or by report and recommendation as dictated by law.

[2] The Receiver filed his responses to the motions to dismiss filed in <u>Wiand v. Waxenberg</u>, 8:05-cv-1856-T-27MSS, on April 17, 2006, and June 30, 2006.

## I.   STANDARD OF REVIEW

The threshold for surviving a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is a low one.  Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al., 711 F.2d 989, 995 (11th Cir. 1983). Such a motion will not be granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  In evaluating the sufficiency of a complaint in light of a motion to dismiss, the pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff.  Quality Foods, 711 F.2d at 994-95.  However, the court should not assume that the plaintiff can prove facts that were not alleged.  Id.  Further, conclusory allegations are not accepted as true.  Gersten v. Rundle, 833 F. Supp. 906, 910 (S.D. Fla. 1993)(citing Assoc. Builders, Inc. v. Alabama Power Co., 505 F.2d 97, 100 (5th Cir. 1974)).[3]

While the law favors resolution of cases on their merits after full litigation, dismissal is mandated where the defendant can show that the law plainly precludes the relief that is sought or precludes the plaintiff from obtaining the relief that is sought: the former being preclusion based on the content of the law raised as

---

[3] Generally in conducting this analysis, the Court is also confined to the four corners of the complaint and its incorporated exhibits.  Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368 (11th Cir. 1997).  The Court is permitted, however, to consider certain documents referred to in the complaint by the plaintiff when those documents are central to the plaintiff's claim.  Id. at 1369.

grounds for the relief and the latter being preclusion due to the plaintiff's standing as the putative recipient of said relief. Even if the law permits the type of action to proceed and permits the plaintiff to proceed, the complaint must allege sufficient facts to place the defendant on notice of the claim being asserted and permit a reasoned response. With respect to general allegations of liability this standard is slight; however, where fraud is alleged, the underlying facts must be pled with particularity and the complaint must include:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and

> (2) the time and place of each statement and the person responsible for making, or not making, the same, and

> (3) the content of such statements and the manner in which they misled the plaintiff, and

> (4) what the defendants obtained as a consequence of the fraud.

Brooks, 116 F.3d at 1371.

Finally, if an action is dismissed it should generally be dismissed without prejudice unless it is so clearly established that the plaintiff cannot, with leave to amend, cure the legal defects that warranted the dismissal. Stevens v. Premier Cruises, Inc., 215 F.3d 1237, 1239-40 (11th Cir. 2000). A district court ordinarily "must give a plaintiff one opportunity to amend the complaint and to cure the pleading defect." Id. Leave to amend, however, "need not be granted where amendment would be futile." Id.

To place these legal precepts in proper context in the cases underlying the Motions addressed by this Report and Recommendation, a review of the facts, the procedural history, the order of receivership and the substance of the counts of the complaints is necessary.

## II.   FACTUAL BACKGROUND AS ALLEGED

Beginning in at least 1990 through May 2005, Howard Waxenberg ("Waxenberg") collected over $130 million by purporting to offer and sell securities to approximately two hundred investors.[4]   In fact, through various entities Waxenberg established a classic "Ponzi" scheme.[5]   He pooled all of the investors' funds into a common account held in the names of Howard Waxenberg Trading, LLC, HKW Trading, LLC, HKW Trading Fund I, LLC, Downing & Associates

---

[4]
The "investors" in Waxenberg's scheme consisted of individuals, couples and corporations. The Undersigned will refer to these "investors" as either "investors," "individuals" or "victims" throughout this Report and Recommendation.

[5]
> The expression 'Ponzi scheme' [describes] fraudulent investment plans in which funds taken from later investors are paid to early investors to create the false appearance that investment activities are generating high returns. The expression takes its name from Charles Ponzi, a famous Boston swindler. Beginning with just $150 in capital in late 1919, Ponzi initiated an investment scheme in which he promised 150% returns on 90-day promissory notes. Ponzi claimed that revenue from the notes would be used to finance profitable investments in the international trade of postal coupons. In fact, Ponzi never invested the funds at all and simply used revenues from new investors to pay off notes purchased by earlier investors, including himself. In only eight months, Ponzi had collected close to $10 million from the scheme.

Wolff v. Cash 4 Titles, 351 F.3d 1348, 1350 n.2 (11th Cir. 2003) (citing Cunningham v. Brown, 265 U.S. 1, 7-9 (1924) (detailing Ponzi's fraud scheme)).

Technical Analysis (n/k/a the Estate of Howard Waxenberg) and the Estate of Howard Waxenberg (collectively referred to as the "Receivership Entities").  He purported to charge the individuals a management fee and fraudulently represented to them that their funds were being invested in options and futures that were returning approximately 20% annually.

Waxenberg falsely represented to the individuals that their "investments" were performing positively and had generated no losses.  To support this assertion, Waxenberg regularly mailed fictitious statements and invoices to the victims that illustrated the positive performance of their "investments."  These statements and invoices also portrayed that the individuals were being paid "interest" based on the high returns generated.  In actuality, the distributions made to the victims did not consist of any "interest" based on their returns, but were derived almost exclusively from the capital contributions from new or existing victims.  Aside from making inducement distributions, Waxenberg used the money he obtained to cover his personal expenses.

Between February 2005 and May 2005, Waxenberg, through the Receivership Entities, began making payments to approximately sixty-three victims of his scheme, including each Defendant in these cases. The other one hundred twenty-five victims did not receive these payments.  The amount the Receiver has alleged was received by each Defendant and the alleged source of the payment is listed in Appendix A. Waxenberg committed suicide on May 15, 2005.

## III.   PROCEDURAL HISTORY

Following Waxenberg's suicide, the Securities and Exchange Commission (the "SEC") began an investigation into Waxenberg and the Receivership Entities. As an outgrowth of that investigation, the SEC brought an enforcement action against the Receivership Entities alleging against each of them violations of the federal securities laws. The SEC simultaneously filed an *ex parte* emergency motion for the appointment of a receiver to oversee the assets of Howard Waxenberg Trading, LLC, HKW Trading, LLC and HKW Trading Fund I, LLC. The Court appointed Burton Wiand as the Receiver for these three entities on June 9, 2005. On September 13, 2005, the Court expanded the scope of the receivership to include the Estate of Howard Waxenberg and Downing & Associates Technical Analysis. Under the terms of the Court's orders appointing receiver, the Receiver was to investigate the affairs of the Receivership Entities and institute actions and legal proceedings,

> for the benefit and on behalf of the [Receivership Entities] and their investors and other creditors, as the Receiver deems necessary against those individuals, corporations, partnerships, associations and/or unincorporated organizations, which the Receiver may claim have wrongfully, illegally or otherwise misappropriated or transferred monies or other proceeds directly or indirectly traceable from investors in the [Receivership Entities] . . . provided such actions may involve, but not be limited to, seeking imposition of constructive trusts, disgorgement of profits, recovery and/or avoidance of fraudulent transfers under Florida Statute § 726.101, et seq., or otherwise, . . . and such orders from this Court as may be necessary to enforce this [o]rder.

SEC v. HKW Trading, LLC, et al, 8:05-cv-1076-T-24MSS, Dkt. 75 (M.D. Fla.

February 22, 2006), http://ecf.flmd.circ11.dcn. (the "SEC action")

Subsequently, because the Receiver's deadline to pursue certain claims was about to expire, the SEC moved for reappointment of the Receiver. On February 22, 2006, the Court reappointed Burton Wiand as the Receiver for all Receivership Entities as dictated by the Court's June 2005 and September 2005 orders. Within ten days of the order reappointing receiver, copies of the complaint in the SEC action and copies of the order reappointing receiver were filed in the United States District Courts for the various districts where Defendants reside. On April 25, 2006, on stipulation of the SEC and the Receiver on behalf of all of the Receivership Entities, including the Estate of Waxenberg, the Court entered an order of permanent injunction against all of the Receivership Entities. HKW Trading, LLC, 8:05-cv-1076-T-24MSS, Dkt. 81. Additionally, the Court dismissed the SEC's monetary claims for disgorgement and civil penalties with prejudice. Id.

## IV.   THE RECEIVER'S COMPLAINTS

Subsequent to the order reappointing receiver in February 2006, the Receiver instituted approximately eighty actions against Waxenberg's former victims who received money immediately prior to his death. In his complaints, the Receiver seeks the return of any "inequitable distributions" these individuals received from Waxenberg and the Receivership Entities in the months preceding Waxenberg's death. The Receiver contends these payments were made to the detriment of other similarly situated victims who did not receive such payments. Upon return of the

7

money to the Receivership Entities, the Receiver contends without specifics that he will "equitably redistribute" the funds in an "appropriate manner." The recovery sought by the Receiver is detailed in Appendix B.

Each complaint alleges virtually identical causes of action against each Defendant.[6] The Receiver's complaints allege the following theories of liability:[7]

1. **Fraudulent transfers under the Florida Uniform Fraudulent Transfers Act ("FUFTA"), Fla. Stat. § 726.101, et seq.**

    i. In his first claim for relief, the Receiver contends the transfers from Waxenberg and the Receivership Entities to Defendants were inherently fraudulent because they were made as a part of the Ponzi scheme. The Receiver contends Waxenberg's intent in making the transfers was to "hinder, delay, or defraud the creditors and/or investors of the Receivership Entities."

    ii. The Receiver alleges that the transfers were made without valid consideration because the Receivership Entities did not receive "reasonably equivalent value" from Defendants in exchange for

---

[6] Defendant Zelda Waxenberg is the widow of Howard Waxenberg. The Receiver asserts a fourth claim for relief in the amended complaint filed in the case against Mrs. Waxenberg, Wiand v. Waxenberg, 8:05-cv-1856-T-27MSS, Dkt. 20 (M.D. Fla. February 27, 2006), http://ecf.flmd.circ11.dcn. The Receiver requests an "equitable accounting" to assist him in discovering other potential transfers made to Mrs. Waxenberg and her Trust. The Undersigned will address this issue in a separate report and recommendation.

[7] As virtually all complaints filed in these cases are identical, when quoting language from the complaints, the Undersigned will refrain from citing to a specific complaint unless that complaint presents a novel allegation.

the transfer.

iii.    Further, the Receiver alleges the Receivership Entities did not directly or indirectly benefit from the transfers to Defendants as the entities were insolvent throughout the course of the Ponzi scheme.

2.    **Unjust Enrichment**

i.    This claim is asserted as an alternative assuming "the statutory remedy in [FUFTA] Section 726, Florida Statutes (2006), does not provide an adequate remedy at law."

ii.    The Receiver contends Defendants "knowingly and voluntarily" accepted and retained a benefit of the funds of the Receivership Entities.  The Receiver contends Defendants' retention of those benefits is inequitable unless Defendants pay the Receiver the value of the benefits received.

3.    **Disgorgement of Unlawful Profits**

i.    This claim is also asserted as an alternative assuming "the statutory remedy in [FUFTA] Section 726, Florida Statutes (2006), does not provide an adequate remedy at law."

ii.    The Receiver contends Defendants failed to provide consideration for the monies transferred by Waxenberg and the Receivership Entities.   The Receiver contends the monies

transferred to Defendants belonged to the Receivership Entities

and the other investors in the Receivership Entities and continue

to be wrongfully retained by Defendants.  As such, the Receiver

contends the Receivership Entities are entitled to disgorgement

of those monies from Defendants.

## V.      THE MOTIONS

Against this factual and procedural backdrop, Defendants each contend the

complaints filed in these actions must be dismissed for the following reasons: (1) the

Receiver lacks constitutional and prudential standing to pursue his FUFTA claim; (2)

the Receiver failed to allege fraud under FUFTA with particularity in accordance with

Fed. R. Civ. P. 9(b); (3) the Receiver failed to state a claim for unjust enrichment;

and, (4) the Receiver cannot assert a claim for disgorgement of profits.[8]

For the reasons that follow, the Undersigned **REPORTS** and **RECOMMENDS**

that Defendants' Motions be **GRANTED**.

## VI.     DISCUSSION

### <u>Statutory Claim</u>

### A.      Whether the Receiver Lacks Constitutional and Prudential Standing to Pursue His FUFTA Claim.

Standing is a threshold issue that must be addressed at the onset of the

---

[8]

While some Defendants raise matters peculiar to their cases, each of the common issues
raised by Defendants is addressed in this Report and Recommendation.  All other bases
for dismissal that have been raised will be addressed by a separate report and
recommendation to be filed only in the case to which the separate issue(s) relate(s).

Court's review of the Receiver's claim.  <u>E.F. Hutton v. Hadley</u>, 901 F.2d 979, 984 (11th Cir. 1990).  To analyze whether a plaintiff has standing, the court must consider both the constitutional and prudential implications of the plaintiff's claims.  <u>See</u> <u>Valley Forge Christian College v. Americans United for Separation of Church & State</u>, 454 U.S. 464, 472 (1982).  To satisfy the constitutional component of standing, the party asserting standing must establish (1) an actual or threatened injury, (2) that the injury is fairly traceable to the alleged unlawful conduct and (3) that the injury will likely be redressed by the relief requested.  <u>Hadley</u>, 901 F.2d at 984 (citing <u>Valley Forge Christian College</u>, 454 U.S. at 472).  If the constitutional standing requirements are met, the court must next consider whether it is prudent to permit the claims to proceed as asserted.  The three prudential considerations which will discourage judicial review of a claim include (1) the assertion of a third party's rights, (2) allegation of a generalized grievance rather than an injury particular to the litigant and (3) assertion of an injury outside the zone of interests of the relevant statute or constitutional provision.  <u>Id.</u> at 985.

In their Motions, Defendants rely on <u>Caplin v. Marine Midland Grace Trust Co.</u>, 406 U.S. 416 (1972) and <u>Hadley</u> to contend the Receiver lacks standing to pursue his claims standing in the shoes of the investors because the Receiver has not alleged the Receivership Entities suffered any injuries.  Defendants contend the only injuries alleged are the injuries suffered by the victims who did not receive a payment from Waxenberg and the entities and for whom Wiand was not appointed receiver.

See Caplin, 406 U.S. at 416 (holding that a trustee of a corporation in reorganization did not have standing under the Bankruptcy Act to assert claims on behalf of debenture holders); Hadley, 901 F.2d at 979 (holding that a bankruptcy trustee did not have standing to assert tort claims on behalf of a portion of the customer creditors).[9] Thus, the Receivership Entities are asserting injuries sustained by the individuals who did not receive a payment.

Further, Defendants assert the Receivership Entities cannot redress any injuries as the complaints allege they perpetrated the scheme which they now seek to remedy. Thus, they acted in concert with or as the alter ego of Waxenberg and are barred by the doctrine of *in pari delicto*. See O'Halloran v. First Union Nat'l Bank of Fla., 350 F.3d 1197, 1204 (11th Cir. 2003) (stating that a corporate entity that is merely the "alter ego" of the wrongdoer lacks standing to pursue claims for injuries resulting from a Ponzi scheme as the wrongdoer could not injure himself. However, the court noted that if the corporation possessed "a significant membership and a governing body" it cannot be said to be the wrongdoer's alter ego); Freeman v. Dean Witter Reynolds, Inc., 865 So. 2d 543, 551 (Fla. 2d DCA 2003) (finding that *in pari delicto* barred a receiver's claims when the corporation was created by the wrongdoer to "dupe the customers").

Additionally, Defendants contend the Receiver lacks standing because he

---

[9]

The Hadley court expressly limited its holding to the specific facts of that case. 901 F.2d at 985.

cannot meet the prerequisites for pursuing a claim under FUFTA. Specifically, Defendants contend the Receiver lacks standing under FUFTA because FUFTA provides recovery only for creditors. See Friedman v. Heart Institute of Port St. Lucie, 863 So. 2d 189, 192 (Fla. 2003). Defendants assert, under the plain language of the statute and as interpreted by the Florida Supreme Court, there is no recovery under the statute for a debtor, a receiver, or any other person or entity who is not a creditor.

In response to Defendants' challenges to his standing, the Receiver relies principally on the language in the Court's order, that he prepared and submitted *ex parte,* which reappointed him receiver. (Tr. 29) In his complaints, the Receiver contends the language he submitted in the order authorizes the action he has brought because it states that he could institute actions and legal proceedings,

> for the benefit and on behalf of the Receivership Entities and their investors and other creditors against individuals or entities which the Receiver claims have wrongfully or improperly received funds or other proceeds directly or indirectly traceable from investors in the Receivership Entities, *including but not limited to* actions seeking constructive trusts; disgorgement of profits; recovery and avoidance of fraudulent transfers under Florida Statute § 726.101, et seq., or otherwise.

(Receiver's Compl. (emphasis added)).

Further, while acknowledging that a receiver acts on behalf of receivership entities rather than investors or creditors in those entities, the Receiver contends he has standing to bring ancillary actions to recover the Receivership Entities' assets which were fraudulently transferred to investors in the Waxenberg Ponzi scheme. (Pl. Br.

at 11)

Next, the Receiver asserts that the doctrine of *in pari delicto* is inapplicable to the present case because once Waxenberg was removed from control over the Receivership Entities, the entities were "cleansed" of their wrongdoing and entitled to sue to redress their injuries. See Scholes v. Lehmann ("Scholes"), 56 F.3d 750, 754-55 (7th Cir. 1995). Further, the Receiver contends Defendants' reliance on Caplin and Hadley is misplaced. In Caplin and Hadley, the courts resolved the question of whether a trustee in *bankruptcy* had standing to pursue claims on behalf of investors. The Receiver notes that the Eleventh Circuit has limited the application of Hadley to the specific facts of that case and at least one judge in the Middle District of Florida has concluded that because Caplin and Hadley arose in the context of bankruptcy those cases were not controlling precedent on the issue of the standing of an equity receiver. See Obermaier v. Arnett, No.2:02CV111FTM29DNF, 2002 WL 31654535, at *3 (M.D. Fla. Nov. 20, 2002).

### i.      The Receiver's Standing Generally

As a preliminary matter, the Court rejects the Receiver's assertion that the Court's order appointing him receiver authorized him to pursue any and all claims on behalf of the Receivership Entities. The Court's order could only have permitted the Receiver to pursue claims he was authorized to pursue under the United States Constitution and the applicable federal and state statutes. Specifically, the Court granted the Receiver the power to institute legal proceedings for the benefit of the

Receivership Entities, "their investors and other creditors." HKW Trading, LLC, 8:05-cv-1076-T-24MSS, Dkt. 75.  On close reading, it did not authorize specific causes of action; rather it provided that "such actions _may_ involve, but not be limited to, seeking imposition of constructive trusts, disgorgement of profits, recovery and/or avoidance of fraudulent transfers under Florida Statute § 726.101, et seq., or otherwise." Id. (emphasis added).  As the Receiver conceded at the hearing, the Court did not purport to confer standing on the Receiver which would be contrary to constitutional and statutory law.   (Tr. 75-76); See Scholes v. Schroeder ("Schroeder"), 744 F. Supp. 1419, 1421 (N.D. Ill. 1990) (stating that "the appointment of a receiver is inherently limited by the jurisdictional constraints of Article III and all other curbs on federal court jurisdiction").   Conformance with the specific requirements of the law underlying the distinct claims asserted is required before the Court may permit the action to proceed.  For example, if the Receiver sought to bring a Title VII action or sought to pursue a claim barred by an applicable statute of limitations, the existence of the order appointing him receiver and authorizing him to pursue ancillary claims would not remove the prerequisites or barriers to the actions sought to be asserted.  If the action the Receiver attempts to assert does not conform to the requirements of the law, it cannot be sustained on the basis of the existence of the order.

Similarly, the Court rejects the Receiver's argument that his standing to bring this action under FUFTA is expressly authorized by his general power to "bring

15

ancillary actions to recover assets which were fraudulently transferred to investors in a Ponzi scheme." Obermaier, 2002 WL 31654535, at *3 (citing Commodity Futures Trading Commission v. American Commodity Group Corp., 753 F.2d 862, 866 n.6 (11th Cir. 1984) and Commodity Futures Trading Commission v. Chilcott Portfolio Mgmt., Inc., et al., 713 F.2d 1477 (10th Cir. 1983)). In each cited case, the courts acknowledged a receiver's right to bring claims on behalf of receivership entities, a right which is undisputed in this case. A receiver's actions, however, cannot be sustained unless the receiver meets the statutory and constitutional prerequisites to pursue such "ancillary actions" for the benefit of the receivership entities. Neither case cited by the court in Obermaier addressed the right to bring a FUFTA claim, the question presented here, nor did they excuse the Receiver from the duty to plead and prove each element of the claims asserted pursuant to this ancillary authority. Having the power to initiate suit is a separate issue from having standing to pursue the claims or the ability to meet the required proof. See Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1482-83. Thus, the Court must evaluate separately the Receiver's standing to pursue his FUFTA claim.

### ii.   The Receiver's FUFTA Claim

The Florida Uniform Fraudulent Transfers Act was promulgated to prevent an insolvent debtor from transferring assets out of the reach of its creditors when the debtor's intent is to hinder, delay, or defraud any of its creditors. See Fla. Stat. § 726.105(1) (2006). Put simply, if a creditor has a claim, has brought a claim or

evinced an intent to bring a claim, the debtor cannot vitiate the claim by secreting

assets available to satisfy the claim.   Thus, the statute provides that any transfer

made or obligation incurred by a debtor is fraudulent as to a creditor if the debtor

made the transfer or incurred the obligation to hinder or defraud the creditor or

without receiving "reasonably equivalent value in exchange for the transfer or

obligation." Fla. Stat. § 726.105(1).  Pursuant to the statute, for a cause of action to

exist the creditor-plaintiff must allege (1) there was a creditor sought to be

defrauded, (2) a debtor intending fraud, and (3) a conveyance of property which

could have been available to satisfy the debt due.  Nationsbank, N.A. v. Coastal

Utils. Inc., 814 So. 2d 1227, 1229 (Fla. 4th DCA 2002) (citing Huntsman Packaging

Corp. v. Kerry Packaging Corp., 992 F.Supp. 1439, 1446 (M.D. Fla. 1998)).   In

Friedman v. Heart Institute of Port St. Lucie, the Florida Supreme Court defined a

creditor as one who possesses a "claim" under FUFTA and, thus, may seek a variety

of remedies to prevent the fraudulent transfer of assets.   863 So. 2d at 191.   A

"claim" means a right to payment, whether or not it is reduced to judgment. Id.  The

court, based on the plain language of the statute, stated that a plaintiff suing under

FUFTA must show he has a "claim" which qualifies him as a "creditor" of the entity

or individual who is transferring or attempting to transfer funds to thwart the creditors'

attachment. Id.; Fla. Sta. § 726.105(1).

In this regard, Florida's Second District Court of Appeals has held that an

equity receiver may not pursue claims that are owned by creditors of the receivership

entities.  See Freeman, 865 So. 2d at 550.  In Freeman, the court stated that in such ancillary actions an equity receiver can bring actions previously owned by the entities in receivership, he cannot pursue claims owned directly by the creditors of the entities.  Id.  As the court explained, "[a]lthough a receivership is typically created to protect the rights of creditors, *the receiver is not the class representative for creditors* and receives no general assignment of rights from the creditors."  Id. (emphasis added).  Significantly, the Receiver acknowledged at the hearing that he was not delegated any authority by the victims, which include Defendants in these cases,[10] to pursue claims *for their benefit*.  (Tr. 100)

It is, of course, commonplace for bankruptcy trustees/receivers to pursue claims under various states' Uniform Fraudulent Transfer Acts.  See In re Schaefer, 331 B.R. 401, 415-223 (Bankr. N.D. Iowa 2005) (finding that a bankruptcy trustee suing a corporation could avoid fraudulent real property transfers made by the corporate principals to the corporation under the Bankruptcy Code and Iowa's UFTA); In re Emerson, 244 B.R. 1, 38-40 (Bankr. D.N.H. 1999) (finding that a bankruptcy trustee suing the transferee could avoid fraudulent transfers made by the debtor-transferor under the Bankruptcy Code and New Hampshire's UFTA).  This authority is expressly granted in 11 U.S.C. § 544 which gives bankruptcy trustees

---

[10] The Receiver contends he is pursuing these actions to recover "assets" of the Receivership Entities in order to equitably redistribute the funds among all of the investors, including Defendants.

status as judicial lien creditors over the assets of the estates over which they preside and preempts state statutes to the contrary.[11]   Congress did not grant similar authority in the statute relied upon by the SEC for the appointment of the Receiver. See HKW Trading, LLC, 8:05-cv-1076-T-24MSS, Dkt. 5 (citing 15 U.S.C. § 77v(a) (2006)).   Thus, no such common law or statutory "creditor" status is conferred upon SEC equity receivers.   Rather, their status under FUFTA is defined by their relationship to the transferor.

Paramount to the issue of whether the Receiver has standing to pursue his FUFTA claim, then, is the need to clarify in whose shoes the Receiver purports to stand.  In the complaints, the Receiver states that he brings the action "on behalf of the Receivership Entities *and their investors* to recover the distribution(s) made to the Defendants." (emphasis added)  In his global response to the Motions, however, the Receiver acknowledged that he does not have authority to redress injuries on behalf of the investors, who are actual or potential creditors of the Receivership Entities. (Pl. Br. at 11)  Because the Receiver has conceded that he is not standing in the shoes of the defrauded investors, the Court need not address whether Hadley or Caplin, both of which were decided in the context of bankruptcy, are controlling precedent on the issue of whether an equity receiver has standing to pursue claims

---

[11]

Even with this statutory grant of authority to pursue such claims "on behalf of creditors," the bankruptcy trustee's ability to pursue claims directly owned by creditors has been challenged. See Feltman v. Prudential Bache Sec., 122 B.R. 466 (Bankr. S.D. Fla. 1990).

on behalf of investors.

The Receiver's only legal authority for his assertion that he may, as a receiver for the Receivership Entities, pursue a claim under FUFTA, are the Seventh Circuit's decision in <u>Scholes</u> and the court's decision in <u>Obermaier</u>.  In <u>Scholes</u>, the corporate principal, Michael Douglas, operated a Ponzi scheme using three of his corporations. 56 F.3d at 752.  The receiver appointed to represent Douglas and the corporate entities brought suit on behalf of the under the Illinois law of fraudulent conveyances as it stood in 1989 seeking to recoup money transferred in the course of the Ponzi scheme from Douglas' corporations to one victim who received more than his initial contribution, Douglas' ex-wife and six religious corporate entities.  <u>Id.</u> at 753.  The Seventh Circuit determined that the receiver had standing to bring suit against the defendants under the statute.

In <u>Obermaier</u>, David Mobley, Sr. orchestrated a Ponzi scheme through twelve corporate entities which derived their income from the Ponzi scheme.  2002 WL 31654535, at *1.  The receiver, Obermaier, brought an action under FUFTA on behalf of the receivership entities against investors in the entities who received "false profits" from Mobley.  <u>Id.</u> at *2.  In the complaint, the receiver alleged that Mobley was the active perpetrator of the fraud.  <u>Id.</u>  After a general statement that "[t]he facts which are pled in the [c]omplaint . . . adequately allege causes of action under Florida law which can be prosecuted by the [r]eceivership [e]ntities," the court concluded that the receiver had standing to pursue a claim under FUFTA.  <u>Id.</u> at 4.

20

Scholes, having been decided by the Seventh Circuit, is not binding authority in this Circuit.   In any event, the Court finds Scholes and its progeny to be distinguishable from the instant case because, among other reasons, the Scholes court analyzed the receiver's standing to pursue a fraudulent transfer claim under the Illinois law of fraudulent conveyances, Ill. Rev. Stat. ch. 59, ¶ 4 (1987), which predated the Illinois Uniform Fraudulent Transfers Act, 740 ILCS 160.  The 1989 version of the Illinois law provided that "'every gift . . . or transfer . . . made with the intent to disturb, delay, hinder or defraud creditors *or other persons* . . . shall be void as against such creditors . . . *and other persons*.'"  Scholes, 56 F.3d at 753 (quoting Ill. Rev. Stat. ch. 59, ¶ 4 (1987)) (emphasis added); See Stenger v. World Harvest Church, Inc., No. Civ. A.1:04CV00151-RW, 2006 WL 870310, at *4 n.6 (N.D. Ga. March 31, 2006) (stating that the "and others" language in Georgia's fraudulent conveyance statute, O.C.G.A. § 18-2-22 (repealed 2002), precluded any argument that suit under the statute may be brought only by "creditors").  The statute at issue in the instant case, FUFTA, does not include the broad language permitting standing to *other* persons.  FUFTA provides that:

> [a] transfer made or obligation incurred by a debtor is fraudulent *as to a creditor*, . . . if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud *any creditor* of the debtor; or . . . [w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation . . . .

Fla. Stat. § 726.105(1) (2006) (emphasis added).

Simply put, the Florida Supreme Court has made clear that the Florida statute

21

provides relief only to creditors of the debtor-transferor.  See Friedman, 863 So. 2d at 191; Fla. Stat. § 726.108 (2006); See also Freeman v. First Union Nat'l Bank, 865 So. 2d. 1272, 1277 (Fla. 2004) (refusing to expand FUFTA beyond the plain language of the statute to create a cause of action against non-transferee aiders and abettors of fraudulent transfers).  As discussed *supra*, creditors are those persons or entities who have claims against Waxenberg and the Receivership Entities, the recovery of which has been hindered by the disbursement of funds via fraudulent transfers.

In the case *sub judice*, the debtor-transferors are alleged to be Waxenberg and the Receivership Entities as they are claimed by the Receiver to have fraudulently conveyed funds to others.  Consistent with Friedman, then, in order to utilize the protections of FUFTA the Receiver would have to allege that he, as receiver for the Receivership Entities, is a creditor or has a claim against these debtor-transferors.  In this regard, at the onset of the hearing on the Motions, the Receiver conceded categorically that neither he nor the Receivership Entities are creditors. (Tr. 9-10) At the end of the hearing, the Receiver attempted to retract that concession, suggesting that the Court broadly construe the term "creditor."  (Tr. 79) The Receiver, however, failed to provide the Court with any legal authority to support a broader interpretation of the term "creditor" than provided in Friedman to permit the recovery of funds under FUFTA by anyone other than one who has a claim against the debtor-transferor.  See Dillon v. Axxsys Int'l, Inc., 185 Fed. Appx. 823, 829-30

(11th Cir. 2006) (acknowledging that the term creditor is extremely broad but recognizing that it is nevertheless limited to persons with claims against the debtor-transferors).

Further, while the court in <u>Obermaier</u> permitted the receiver to pursue a claim under FUFTA, the court made that determination without addressing the status of the receiver as a creditor. However, the receiver in <u>Obermaier</u> claimed, without challenge, that he was the creditor of the wrongdoer. Thus, if the Receiver relies on <u>Obermaier</u> to suggest that creditor status is unnecessary to pursue a FUFTA claim, that suggestion is incorrect. Even if <u>Obermaier</u> could be interpreted in such a way, it is distinguishable from the instant case because it was decided prior to the Florida Supreme Court's definitive decision in <u>Freidman</u> specifically limiting recovery under FUFTA to creditors of a fraudulent transferor.

Here, the Receiver has not alleged that he is a creditor of the debtor-transferors and does not assert any further basis for proceeding under FUFTA. Significantly, the Receiver represents all of the Receivership Entities, including the Waxenberg estate; moreover, the same law firm represents all of the same Receivership Entities. This would seem to suggest that neither of the Receivership Entities would have a claim against the other. Additionally, the Receiver cannot claim to be a creditor via the SEC. As noted *supra*, the Court has dismissed the SEC's claims for monetary recovery against all of the Receivership Entities. The Undersigned, therefore, finds that the Receiver lacks standing under FUFTA as pled.

23

Accordingly, the Undersigned **REPORTS** and **RECOMMENDS** that Count I be **DISMISSED**.

### B.    Pleading Fraud with Particularity, Fed. R. Civ. P. 9(b)

Certain Defendants contend the Receiver's complaints should be dismissed for his failure to plead his FUFTA claim with particularity.  To the extent the Receiver intends to assert any fraud claim in his amended complaints, he is reminded that such a claim must be pled with particularity as discussed *supra* and as required by Fed. R. Civ. P. 9(b).  While a Ponzi scheme is deemed fraudulent as a matter of law In re 21st Century Satellite Commc'n, Inc., 278 B.R. 577, 584 (Bankr. M.D. Fla. 2002) (stating that Ponzi schemes are inherently fraudulent *ab initio*), if any fraud is alleged against Defendants, who are admittedly not perpetrators of the Ponzi scheme fraud, it must be alleged with particularity.[12]

### C.    Statute of Limitations, Fla. Stat. § 726.110.

Some Defendants further contend the Receiver's claims are time barred under FUFTA.  The statute of limitations governing the Receiver's FUFTA claim varies depending on which statute he is asserting.  See Fla. Stat. § 726.110.  As the Receiver has failed to identify specifically in his complaints the provision(s) of FUFTA under which he is proceeding, the Court cannot address the statute of

---

[12]

Other Defendants do not concede that Waxenberg and the entities' actions constituted a Ponzi scheme.  For the purposes of this Order, the Court will accept the Receiver's allegation that Waxenberg and the entities' conduct was a Ponzi scheme.

limitations argument on these Motions.  Thus, the Court will construe the statute of limitations argument as a motion for a more definite statement.  Should he elect to reassert these claims, the Receiver should be directed to identify in any amended complaints (1) the specific transactions he is relying upon, including the date of the transactions and the source of payment, (2) the remedy he seeks and (3) the statutory basis for relief.  Any additional arguments raised in Defendants' Motions related to the Receiver's FUFTA claims will not be addressed as the Court finds the Receiver lacks standing to pursue those claims as alleged.

### Equitable Claims

**A.     Whether the Receive May Pursue His Unjust Enrichment Claim.**

**i.     The Receiver's Standing**

As an alternative to his FUFTA claim, the Receiver demands recovery under an unjust enrichment claim.  The Court must determine, therefore, whether the Receiver may accomplish in equity what he cannot accomplish at law.

The first inquiry regarding the Receiver's unjust enrichment claim is whether he has standing to pursue the claim.  As stated above, when analyzing whether a plaintiff has standing, the court must evaluate both the constitutional and prudential implications of the plaintiff's claims.  See Valley Forge Christian College, 454 U.S. at 472 (1982).  The Eleventh Circuit has determined that a corporate entity involved in a Ponzi scheme lacks standing to pursue claims against a third party where there is an "absolute identity of interests" between the wrongdoing principal and the

25

corporation.  See O'Halloran, 350 F.3d at 1204 (stating that a corporate entity that is merely the "alter ego" of the wrongdoer lacks standing to pursue claims for alleged injuries which resulted from a Ponzi scheme); Troelstrup v. Index Futures Group, Inc., 130 F.3d 1274, 1277-78 (7th Cir. 1997) (differentiating cases like Scholes where there were entities with legal rights from cases where the enterprise has no legal identity apart from the defrauding party.  The court found the receiver did not have standing to sue on behalf of the non-corporate enterprise with no identity distinct from the perpetrator.); Feltman, 122 B.R. at 473-74 (stating that "since the corporations were essentially only conduits for stolen money, any injury to the debtors . . . must be substantially coterminous with the injury to the defrauded investors . . . . Thus, any alleged injury to the debtors is as illusory as was their corporate identity").

Here, the Receiver has conceded that the Estate of Howard Waxenberg is the only remaining embodiment of Waxenberg himself and "perhaps the case should be dismissed as to . . . the Estate of Howard Waxenberg."  (Tr. 106)  Additionally, he has all but conceded that Downing & Associates Technical Analysis (n/k/a the Estate of Howard Waxenberg) was simply the "alter ego" of Waxenberg in that it did not have a controlling body or shareholders beyond Waxenberg.  At the hearing, the Receiver stated "the Downing party was a d/b/a and of course . . . would not be separate and distinct" from Waxenberg.  (Tr. 20)  Thus, certainly neither the Estate of Howard Waxenberg nor Downing & Associates would be able to assert a claim

against any of the victims of the scheme.   Accordingly, the Undersigned **REPORTS** and **RECOMMENDS** that the claims brought on behalf of the Estate of Howard Waxenberg and Downing & Associates Technical Analysis (n/k/a the Estate of Howard Waxenberg) against Defendants be **DISMISSED with prejudice**.

### ii.    The Receiver's Unjust Enrichment Claim

The Court must next determine whether the Receiver has stated a claim for unjust enrichment as pled on behalf of the remaining Receivership Entities.   The rights of receivers pursuing state law claims are determined by reference to state law.  See Knauer v. Jonathon Roberts Fin. Group, 348 F.3d 230, 235 (7th Cir. 2003) (citing O'Melveny & Myers v. FDIC, 512 U.S. 79, 83, 88 (1994)).   Under Florida law, a plaintiff states a claim for unjust enrichment when there has been (1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of such benefit, and (3) acceptance and retention of such benefit by the defendant under such circumstances that it would be inequitable for him to retain it without paying the value thereof.  Hercules, Inc. v. Pages, 814 F. Supp. 79, 80 (M.D. Fla. 1993) (citing Henry M. Butler, Inc. v. Trizec Properties, Inc. 524 So. 2d 710, 712 (Fla. 2d DCA 1988)).   It is axiomatic that there must be a benefit conferred before unjust enrichment exists.  Henry M. Butler, Inc., 524 So. 2d at 712.

Under an unjust enrichment theory, the Receiver must allege some benefit to Defendants which, if retained, would be inequitable.   To that end, it would presumably be inequitable, in most circumstances, for Defendants to retain money

which did not belong to them.  Here, however, Defendants correctly point out that the Receiver has failed to allege in the complaints whether Defendants received some amount in excess of the losses they sustained in this fraudulent Ponzi scheme.  The Receiver has simply alleged in his complaints that Defendants received their "return of principal" in the final distribution made prior to Waxenberg's death.[13]  "Principal" presumably refers to the initial losses Defendants sustained as a result of being victims of the fraud.

In his global response to the Motions, but not in any allegation in the complaints, the Receiver has stated he is seeking "false gains" and has provided more detailed information on the payments made to Defendants.  See App. C. Based on this submission, it appears that the Receiver is seeking to recover more than the "false gains" certain Defendants received from the Receivership Entities. In some instances, he appears to be seeking recovery from Defendants who suffered a loss or who "broke even," that is received no more than the initial fraud loss.  Even the Receiver's primary legal authority rejects a recovery in such

---

[13]

The Receiver does not allege that Mrs. Waxenberg received a "return of principal" payment.  Instead, the Receiver contends Mrs. Waxenberg received "significant distributions" from Waxenberg and the Receivership Entities as Howard Waxenberg's wife and as an investor.  The Receiver has incorporated a spreadsheet entitled "Checks Written to Zelda Waxenberg from all Waxenberg Entities" into his amended complaint in her case. According to that spreadsheet, Mrs. Waxenberg's payments began on February 4, 1999, and continued until May 13, 2005.  The spreadsheet does not provide any detail on the source of the payments over this time period.  The Receiver did not incorporate a similar spreadsheet in the other Defendants' cases presently before the Court on their Motions.

instances.  See Scholes, 56 F.3d at 757-58.  The Scholes court determined under the broader Illinois fraudulent conveyance act that the defendant investor/victim was only required to return "the difference between what he put in at the beginning and what he had at the end."  Id.  The Receiver offers no legal authority to support his claimed entitlement to recover anything beyond such excess payments.  In any event, the Receiver has failed to include sufficient detail in the complaints to apprise Defendants of their alleged "unjust enrichment" or to meet this threshold requirement.[14]  As stated above, the complaints simply state Defendants received a return of their principal payment or Ponzi scheme loss, which, by definition, is not unjust.[15]  For this reason, the claim for unjust enrichment should be dismissed.

### iii.   In Pari Delicto

Likewise, as pled, the Receiver's equitable claim for unjust enrichment is barred by the doctrine of in pari delicto.[16]  Under the doctrine of in pari delicto, a

---

[14]

See also World Harvest Church, Inc., 2006 WL 870310, at *3 (stating on summary judgment that the facts surrounding a fraudulent conveyance to the defendants did not "fit neatly into the unjust enrichment theory" where there was clearly no expectation that the conveyance would be returned for value).

[15]

Interestingly, the payment information provided by the Receiver in Appendix C shows that certain Defendants are being asked to return an amount equivalent to their initial contributions despite having allegedly received payments in excess of their initial contributions.

[16]

The Latin phrase "in pari delicto" means "of equal fault."  Perma Life Mufflers, Inc. v.  Int'l Parts Corp., 392 U.S. 134, 135 (1968); Knauer v. Jonathon Roberts Fin. Group ("Jonathon Roberts Fin. Group"), No.01-1168-C-K/T, 2002 WL 31431484, at *7 (S.D. Ind. Sept. 30,

plaintiff who has participated in the wrongdoing may not recover damages resulting from the wrongdoing.  Edwards, 437 F.3d at 1152.  Again, whether the defense of _in pari delicto_ applies against the Receiver in this case is resolved by reference to Florida law.  As a general rule in Florida, the receiver steps into the shoes of the corporation, individual or estate whose interests he was appointed to protect and therefore takes the rights, causes and remedies that were available to the entity he was chosen to represent.  Hamilton v. Flowers, 134 Fla. 328, 343 (1938); Fla. R. Civ. P. 1.620 (2007); See also 16 Fletcher Cyc. Corp. § 7852.10 (2006) (stating that "any claim brought by a receiver is subject to the same defenses that could have been raised in a suit by the corporation").

_____Attempting to avoid the _in pari delicto_ defense, the Receiver relies on the Freeman decision which, citing Scholes, stated that defenses such as unclean hands and _in pari delicto_ may not always apply against a receiver even though such defenses might have applied to the receivership entities outside of the receivership. 865 So. 2d at 550.  The court, however, distinguished fraudulent conveyance cases in which the receivership entities, or legally distinct entities, may be "cleansed" of the wrongdoing of their principal (i.e., Scholes) from tort cases in which the corporations

---

2002). The doctrine is premised upon the equitable principle that "'[n]o [c]ourt will lend its aid to a man who founds his cause of action upon an immoral or illegal act.'" Jonathon Roberts Fin. Group, 2002 WL 31431484, at *7 (quoting In re Dow, 132 B.R. 853,860 (Bankr. S.D. Ohio 1991)).  Under the doctrine, a plaintiff may not maintain a claim against a defendant if the plaintiff bears equal or greater fault for the claim asserted.  Jonathon Roberts Fin. Group, 2002 WL 31431484, at *7; See also Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards ("Edwards"), 437 F.3d 1145, 1152 (11th Cir. 2006).

were deemed "sham corporations" with no distinct identity from their principal (i.e., Feltman).  Id. at 550-51.  In an attempt to reconcile the cases, the Freeman court stated that as a general rule "when the entities in receivership do not include a corporation that has at least one honest member of the board of directors or an innocent stockholder, we do not perceive a method to separate the fraud and intentional torts of the insiders from those of the corporation itself."  865 So. 2d at 551.

Whether this reconciliation was necessary in a non-fraudulent conveyance case, such as Freeman, is questionable as the Seventh Circuit had previously limited its "cleansing of corporate zombies"[17] analysis in Scholes to cases arising under the Illinois fraudulent conveyance statute.  See Knauer, 348 F.3d at 236 aff'g 2002 WL 31431484, at *10.  Further, the only Eleventh Circuit case that has discussed the Scholes decision on this point is Edwards in which the court rejected a bankruptcy trustee's reliance on Scholes outside the context of a fraudulent conveyance action and found that the defense of in pari delicto may apply against a bankruptcy trustee.  437 F.3d at 1151-52.  The court, following the unanimous lead of all circuits addressing the issue, concluded that "in pari delicto applies with equal force to a trustee-in-bankruptcy as a debtor outside of bankruptcy."  Id. at 1151 (citations omitted).

---

[17]

See Freeman 865 So.2d at 550 (capsulizing the "cleansing of corporate zombies" theory espoused in Scholes.

31

Here, the Receiver has offered no reasoned bases for providing greater protection to federal equity receivers in this context than would be provided for bankruptcy trustees, and the Undersigned can conceive of none.  The policy arguments advanced by the Receiver are the same as those considered and rejected by the courts in <u>Freeman</u> and <u>Edwards</u> (i.e., the involuntary status of the receiver, "more money" in the receivership furthers the underlying policy of the statute establishing the receivership, avoiding windfall to the defendants, etc.).  As such, the Undersigned finds that the doctrine of *in pari delicto* is available against the Receiver in these cases.

The Undersigned also finds that the "cleansing of corporate zombies" analysis in <u>Scholes</u>, if viable at all, should only be viable in the context of an action involving fraudulent conveyances, i.e., FUFTA.  As the Eleventh Circuit explained, "fraudulent conveyances are an exception to the general rule that the trustee takes the debtor estate as it is at the commencement of the bankruptcy."  <u>Edwards</u>, 437 F.3d at 1151-52 (citing bankruptcy statutes).  In any event, whether the doctrine applies outright or applies subject to the "cleansing," which occurs under Florida law, according to <u>Freeman</u>, only when the corporation has at least one honest member of the board of directors or an innocent shareholder, is inconsequential in these cases as the final result would remain the same.

As stated by the <u>Freeman</u> court, even though the entities may be cleansed by the receivership in some instances, the receivership "cannot alter historical facts."

32

865 So.2d at 551.  The facts in these complaints and the complaint filed in the SEC action clearly allege that the Receivership Entities were the perpetrators of the fraud and in concert with each other.  As stated above, the Receiver has alleged[18] that Waxenberg collected over $130 million by offering and selling securities to approximately two hundred investors as part of his Ponzi scheme.  (Receiver's Compl. ¶ 11)  According to the complaints, he then pooled the investor/victims' principal funds into common accounts held in the name of the Receivership Entities. (Receiver's. Compl. ¶ 12)  Further, the Receivership Entities derived their assets from the investors' funds and had little, if any, additional income.  (Receiver's Compl. ¶ 12)

Similarly, the SEC has alleged that Waxenberg owned, controlled and was the sole manager of the Receivership Entities (the "**Defendants**").  (SEC Compl. ¶ 1, 5, 8, 9)[19]  HKW Trading, LLC managed and controlled HKW Trading Fund I, LLC.  (SEC

---

[18]

Citing the complaint filed in <u>Wiand v. Abraham</u>, 8:06-cv-609-T-23MSS, Dkt. 1 (M.D. Fla. April 7, 2006), http://ecf.flmd.circ11.dcn.

[19]

The Receiver conceded at the hearing that the allegations contained in the SEC action applied to the instant cases. Further, the instant complaints reference the SEC action as the source and basis for the authority asserted. <u>See, e.g.</u>, <u>Wiand v. Schnall</u>, 8:06-cv-706-T-23MSS, Dkt. 5 ¶ 2 (M.D. Fla. June 6, 2006), http://ecf.flmd.circ11.dcn.

| | |
|---|---|
| The Court: | What is the allegation of the SEC in the SEC proceedings? |
| The Receiver: | The SEC said that they were being - - all entities were being operated as a Ponzi scheme and that is probably so. |
| The Court: | There is no way to divorce, though, this case from the allegation of the SEC in whose shoes the |

Compl. ¶ 8)  In fact, in its complaint, the SEC alleged that after Waxenberg's suicide,

it was unclear who, if anyone, was in control of the **Defendants**.  (SEC Compl. ¶ 4)

According to the SEC complaint, the **Defendants** diverted or misappropriated

investors' funds to Defendants HKW Trading Fund I, LLC and the Estate of Howard

Waxenberg.  (SEC Compl. ¶ 2)  The **Defendants** falsely represented to investors

that they were running a successful day-trading operation and falsely claimed to

investors they were earning a quarterly net investment return of approximately 5%

or approximately 20% annually.  (SEC Compl. ¶ 3, 18)  However, the **Defendants**

materially overstated the amount of these returns and the value of the individual

investors' accounts.  (SEC Compl. ¶ 3)  These fraudulently overstated returns duped

investors into purchasing more securities from the **Defendants**.  (SEC Compl. ¶ 17)

Actually, the **Defendants** were running a Ponzi scheme using new investors'

capital contributions, not actual earnings, to pay investors.  (SEC Compl. ¶ 20)

Beginning at least in 2002, Defendants Howard Waxenberg Trading, LLC, HKW

Trading, LLC and Downing & Associates Technical Analysis, directly and indirectly,

knowingly, willfully or recklessly:  (a) defrauded investors; (b) made untrue

---

|                 | receiver stands to pursue the claims through the SEC proceedings on behalf of the entities. |
|-----------------|---------------------------------------------------------------------------------------------|
| The Receiver:   | You are absolutely correct, Your Honor.                                                     |
| The Court:      | So, whatever the SEC said they were is what they are.                                       |
| The Receiver:   | That is true, Your Honor . . . (proceeded to assert argument for Scholes' cleansing)        |

(Tr.  20-21)

statements of material facts; and/or (c) engaged in acts, practices and courses of business as a fraud upon the purchasers of securities.  (SEC Compl. ¶ 27)  On April 25, 2006, the Receiver agreed to the permanent injunctive relief demanded by the SEC which enjoined all of the **Defendants**/Receivership Entities based on their alleged offenses and frauds.  HKW Trading, LLC, 8:05-cv-1076-T-24MSS, Dkt. 81.

In short, the Receivership Entities are alleged to have orchestrated the wrongdoing and no wrongdoing is alleged against these Defendants.  See Edwards, 437 F.3d at 1152; Jonathon Roberts Fin. Group, 2002 WL 31431484, at *7.  As such, as applied here, the doctrine of *in pari delicto* stands as a bar to the unjust enrichment claim asserted.  See Quiller v. Barclay's American/Credit, Inc., 727 F.2d 1067, 1069 (11th Cir. 1984) (stating that a court may dismiss a complaint when an affirmative defense is clear from the face of the complaint).

As noted *supra*, if an action is dismissed it should generally be dismissed without prejudice.  If, however, it is so clearly established that the plaintiff cannot, with leave to amend, cure the legal defects, leave to amend would be futile and the action should be dismissed with prejudice.  Stevens, 215 F.3d at 1239-40; See, e.g., Freeman, 865 So. 2d at 553 (affirming dismissal with prejudice under Fed. R. Civ. P. 12(b)(6)); Knauer, 348 F.3d at 238 (affirming dismissal with prejudice).

For the foregoing reasons, the Undersigned recommends that Count II be **DISMISSED with prejudice**.

35

**B.     Whether the Receiver is Entitled to a Disgorgement of Unlawful Profits.**

In the third count in his complaints, the Receiver attempts to assert a separate claim for disgorgement of profits.  Disgorgement is an "equitable remedy designed to deprive a wrongdoer of his unjust enrichment."  SEC v. First City Fin. Corp., 890 F.2d 1215, 1231 (D.C. Cir. 1989).   Its primary purpose is not to punish the wrongdoer but to ensure that those guilty of fraud do not profit from their ill-gotten gains.  See SEC v. Bilzerian, 814 F. Supp. 116, 120 (D.C. Cir. 1993); SEC v. Wang, 944 F.2d 80, 85 (2d Cir. 1991).   In determining the disgorgement amount, "' it is proper to assume that all profits gained while defendants were in violation of the law constituted ill-gotten gains.'"  SEC v. Chemical Trust, No. 00-8015-CIV, 2000 WL 33231600, at *11-12 (S.D. Fla. December 19, 2000) (quoting Bilzerian, 814 F. Supp. at 120).

Here, Defendants correctly point out that the Receiver's disgorgement claim must fail as a matter of law because disgorgement is not an independent cause of action.  It may be a remedy for a viable cause of action at common law or, in some circumstances, is provided as a statutory remedy for certain claims.  See Abbott Lab. v. Unlimited Beverages, Inc., 218 F.3d 1238, 1242 (11th Cir. 2000) (stating that disgorgement of profits is a remedy under the Lanham Act, 15 U.S.C. § 1117(a)).  Additionally, the Receiver does not allege Defendants committed any wrongdoing or profited from a wrongdoing on their part.   Rather, the complaints identify

36

Waxenberg and the Receivership Entities as the perpetrators in the Ponzi scheme. The only basis for a request of disgorgement is the Receiver's unjust enrichment claim if it can be sustained.  As the Receiver's request for disgorgement of profits hinges on the success of the Receiver's unjust enrichment claim, the Undersigned recommends Count III brought on behalf of the remaining Receivership Entities be **DISMISSED with prejudice** as a stand alone count.

## VII.   CONCLUSION

Having reviewed the claims, the Undersigned respectfully **REPORTS** and **RECOMMENDS** that Defendants' Motions be **GRANTED**:

1.   **With prejudice** as to **all counts** brought on behalf of the Estate of Waxenberg and Downing & Associates Technical Analysis;

2.   **Without prejudice** as to **Count I** (FUFTA)[20] brought on behalf of the remaining Receivership Entities;

3.   **With prejudice** as to **Count II** (unjust enrichment) brought on behalf of the remaining Receivership Entities; and,

4.   **With prejudice** as the **Count III** (disgorgement of profits) brought on behalf of all parties as a stand alone claim.

---

[20]

While it seems implausible that the Receiver will be able to attain the status of a creditor under FUFTA by the Receiver's filing of amended complaints consistent with Fed. R. Civ. P. 11, the Eleventh Circuit has directed that, unless facially futile, a district court allow a plaintiff one opportunity to cure any defects in the complaint.  See Stevens, 215 F.3d at 1239-40.

In issuing this Report and Recommendation, the Undersigned is mindful of the claimed losses sustained by other victims of Waxenberg and the Receivership Entities' scheme.   The Court is also aware of the potential convenience and efficiency of allowing the Receiver, at the expense of the receivership rather than the victims at their personal expense, to pursue funds to help equalize the victims' losses.  Even so, the Receiver's actions, however laudable, cannot proceed without proper legal footing.   Moreover, the Undersigned's Report and Recommendation does not foreclose the individual investors/victims of Waxenberg's fraud from recovering funds from or asserting claims against the Receivership Entities or others if legal or equitable bases exist for such claims.

Respectfully **RECOMMENDED** in Tampa, Florida on this 12th day of January 2007.

MARY S. SCRIVEN
United States Magistrate Judge

**NOTICE TO PARTIES**

Per the Court's directive at the hearing on the Motions, the time for filing any objections to this Report and Recommendation is extended.  Failure to file written objections to the proposed findings and recommendations contained in this Report within **twenty (20) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal. <u>See</u> 28 U.S.C. § 636(b)(1).

Copies furnished to:

Presiding District Court Judge
Counsel of Record
Unrepresented Parties